DECEMBER.                    OWINGS *vs.* NORWOOD's Lessee.

*A memorandum made by a clerk in the record of a deed, stating that the date had been altered, &c. is not evidence, being an act done without authority, and will not invalidate the deed.*

*In executing a commission issued to a foreign country for the purpose of taking testimony, notice is not necessary, but time should be given, that the opposite party might exhibit cross interrogatories.*

*If the heirs of J. S. in whom was the title to land, were living in Great Britain at the passage of the acts of confiscation, then an escheat warrant, issued to E. N. for the said land, issued without authority of law. But a grant to him for the land surveyed under that warrant, came within the provisions of the 8th section of the act of November 1781, ch 20.*

*Such grant is valid to pass the land to E. N. notwithstanding he had not paid more than two thirds of the appraised value of the land*

*The plaintiff on a judgment of condemnation on an attachment on judgment, where there was no fieri facias and sale of the land condemned, does not acquire a legal estate in the land by virtue of the judgment, attachment and condemnation*

*Land liable to confiscation, may be granted by the state, under an escheat warrant.*

*Such escheat grant will operate by relation so as to give title from the date of the warrant of escheat.*

*The 8th section of the act of November 1781, ch. 20, secured the land so escheated to the party, on his paying two thirds of the value.*

*The state, by its commissioners, was in possession of all British property within the limits of the state, under and by virtue of the acts of confiscation.*

*No British subject could hold land in this state on the 19th of November 1794, the time when the treaty with Great Britain was made.*

*Where certain facts would not warrant the presuming a mortgage made in 1706 was satisfied before 1780, the mortgagee being a resident of Great Britain, and altho' he was never in possession of the mortgaged premises—the party not showing any title under the mortgagor.*

*Where lands were mortgaged to a British subject, on failure of payment of the mortgage money, a complete legal estate vested in the mortgagee, liable to confiscation, and was vested in the state under the acts of confiscation, subject to the right of redemption; and the British treaty cannot operate on such a case*

*Ancient deeds of lease and release, not necessary to be recorded, may be read in evidence.*

*The court would not direct the jury to presume a title had been perfected, deeds having been produced showing a defective title had been transferred.*

*The court would not direct the jury that the plaintiff's escheat grant did not pass the land, the defendant claiming the same under a defective title.*

APPEAL from the General Court. The appellee brought an action of *ejectment* for a tract of land called *The Discovery*, lying in *Baltimore* county, containing 520 acres and an half acre of land. The defendant, (now appellant,) took defence on warrant, and plots were returned.

1. *First bill of exceptions.* The plaintiff at the trial at May term 1804, read in evidence the patent of a tract of land called *Brown's Adventure*, granted to *Thomas Brown* on the 10th of November 1695, for 1000 acres. Also the grant to *Norwood*, the lessor of the plaintiff, for the tract of land called *The Discovery*, the land mentioned in the declaration, and for which this suit is brought, dated the 25th day of June 1800, and granted in pursuance of a *special warrant of escheat*, obtained by *Norwood* out of the land office, on the 25th of October 1795, to resurvey and affect a tract of land called *Brown's Adventure*, originally, on the 10th of November 1695, granted to *Thomas Brown*, for 1000 acres, who is stated to have died seized thereof

intestate, and without heirs. In pursuance of which warrant the tract was found to contain, clear of elder surveys, the quantity of 494 and an half acres, to which was added 26 acres of vacant land, and *Norwood*, having paid the treasurer the sum of £578 18 4, being the purchase money due for the escheat land, and £4 17 6, being the composition due for the vacant land added, the state granted to him the land, resurveyed as aforesaid, with the vacancy added, and called *The Discovery*, agreeably to the certificate of survey thereof returned into the land office, bearing date the 25th of April 1796. The plaintiff also offered in evidence, that *The Discovery* is included within the lines of the patent for *Brown's Adventure.* The defendant then offered in evidence, that the great grandson, and heir at law of *Thomas Brown*, the first patentee, and others his descendants, are alive at this time in this state. The plaintiff then read in evidence an office copy of a deed from *Thomas Brown*, the patentee, to *John Gadsby*, bearing date the 2d of May 1700, for the land called *Brown's Adventure*, purporting to be sealed and delivered by *Brown*, in the presence of *Cha. Carroll* and *Thos. Bland*, and having the following indorsements: May 4th, 1699. Then received of the within named *John Gadsby*, the sum of two pounds sterling, being for the fine due the right honourable the Lord Proprietary, upon the alienation of the land within mentioned. As witness my hand.

<div align="right">

*Cha. Carroll.*

</div>

"*Memorandum*. That the date of this was originally according to the date of the above receipt, but aliened by consent of the provincial court and parties, to bring it within the act of assembly.

<div align="right">

"*W. Taylard.*

</div>

"*Memorandum*. This day, to wit, the tenth day of October, in the twelfth year of his Majesty's Reign, &c. *Anno Dom.* 1700, came into the provincial court the within named *Thomas Brown*, and *Kath* his wife, and the said *Kath* being secretly examined according to law, they did acknowledge the land and premises within mentioned to the within named *John Gadsby*, to be his right as of their gift, according to the act of assembly in that case made and provided. Taken and acknowledged in court.

<div align="right">

"*W. Taylard*, Clk."

</div>

The defendant then produced the record book, contain·ing the said deed, with its several indorsements, and prayed the opinion of the court, and their direction to the ju-.ry, that if they were of opinion that the indorsements were made at the request of *John Gadsby*, the grantee in the deed named, and with his privity and consent, and that the deed, with the several indorsements, was recorded for his benefit, and with his assent, that then the indorsements on the deed by the plaintiff produced, are competent to be read in evidence to support the facts therein contained, against the title of *Gadsby*, to the land in the deed mentioned.

CHASE, Ch. J. (a.) The court are of opinion, that the memorandum on the deed from *Thomas Brown* to *John Gadsby*, endorsed, to wit—"Memorandum. That the date of this was originally according to the date of the above receipt, but aliened by consent of the provincial court and parties, to bring it within the act of assembly. *W. Taylard*"—is not evidence, being an act done by *Taylard* without authority, and that the deed is valid and operative in law to transfer the land to *Gadsby*.

SPRIGG, J. observed, that when he sat alone at the trial of this case at the last term, he considered the memorandum as having been made by an officer having authority to make it; but since, upon reflection, he finds that he was wrong in the opinion which he gave. He concurs with the court in the opinion given, that it was an act done by *Taylard* without any authority. The defendant excepted.

<p style="margin-left:2em">Notice is not necessary on executing a commission to take testimony in a foreign country</p>

2. The defendant then offered to read in evidence a commission, issued from this court on the 12th of November 1802, and certain depositions taken thereunder, and returned to this court on the 10th of April 1804. It appears that the defendant had, at May term 1801, obtained a commission to *London* for the purpose of taking testimony, and as the cause was then standing for trial, the commission was granted, with a proviso, that if it was not returned at the next term it would be no cause of continuance at that term on the part of the defendant. At Oc-

(a) *Done*, J. concurred.

tober term 1801, the defendant filed *interrogatories*, and took out duplicate commissions. At May term 1802, the commission and depositions were returned, and the plaintiff obtained a continuance of the cause, and also a commission to *London* upon the same terms, that if it was not returned at the next term, it would be no cause of continuance, &c. At October term 1802, the defendant had leave to renew his commission upon the same terms as were originally granted, and he filed *additional interrogatories*, and issued the commission, and sent a copy of his original and additional interrogatories with the commission, which was returned, with depositions, as before stated, and were now offered to be read, but which were objected to by the plaintiff's counsel.

CHASE, Ch. J. It appears that two terms have intervened since the commission was taken out by the defendant, and the plaintiff had sufficient time to send forward his interrogatories. The oath which the commissioners take, shows that they may receive additional interrogatories at any time before the commission is closed. In executing foreign commissions, notice is not necessary; but time should be given, that the opposite party might exhibit cross interrogatories. The court are of opinion, that the testimony taken under the commission may be read in evidence to the jury.

3. *The second bill of exceptions.* The plaintiff then produced in evidence a deed from *John Gadsby* to *John Barker*, dated the 16th of July 1701, for 130 acres, part of *Brown's Adventure*, describing the part by courses and distances, and calling the same *Barker's Inheritance.* Also a deed from *Gadsby* to *Aaron Rawlings*, for all the residue of *Brown's Adventure*, not conveyed to *Barker*, dated the 2d of October 1703. Also a deed of mortgage from *Aaron Rawlings* to *Jonathan Scarth*, dated the 13th of May 1706, for all the land included in the patent of *Brown's Adventure*, except the 130 acres conveyed to *Barker*, which deed of mortgage was to be void, &c. on payment of £800 sterling money, with interest, on the 13th of May 1709. He then offered evidence, that *Barker* and *Scarth* died before the year 1795, without heirs. He then offered in evidence an escheat warrant, to affect by escheat the whole of *Brown's Adventure*, for the want of

1807.

Owings
vs
Norwood

An escheat warrant could not legally issue to effect land if the heirs of the grantee were living in Great Britain at the time of the act of confiscation; but a grant for the land surveyed under that warrant came within the provisions of the act of November 1781 ch. 20 s. 8.

1807.

Owings
vs
Norwood

the heirs of *Thomas Brown*, or "be it escheat by the means aforesaid, or by any other way or means whatsoever," granted to the lessor of the plaintiff on the 28th of October 1795; also a *certificate* upon that warrant, returned to the land office on the 29th of September 1796; also a *caveat* against a grant's issuing on the certificate by *Edward Dorsey*, on the 26th of August 1796; also a second *caveat* entered against a grant's issuing thereon by *William Hammond* on behalf of *The Baltimore Company*, on the 10th of January 1797; also an order of the judge of the land office dismissing the caveat of *Hammond* on the 30th of September 1797; also an order of the judge of the land office permitting the caveat of *Dorsey* to be withdrawn, and that the same was withdrawn on the 24th of June 1800; and also a *patent* issued upon the certificate to the lessor of the plaintiff for the land therein mentioned called *The Discovery*, bearing date the 25th of June 1800. He then offered evidence, that *Brown's Adventure* and *The Discovery* are truly located upon the plots as the plaintiff hath thereon located them. The defendant then offered in evidence, that the descendants and heirs at law of *Brown*, the original patentee, were at this time in full life in this state; and that *Scarth*, the mortgagee in the deed from *Rawlings*, died in *Great Britain*, having always resided there, leaving issue an only son and heir at law, who during his life always lived, and died in *G. B.* and left issue an only child his daughter and heir at law, who always resided in *G. B.* and married *Francis Moore*; that she and *Moore* her husband, having always during their lives resided in *G. B.* afterwards died, leaving *Frank Moore* of *G. B.* their only son and heir at law, who is now in full life residing in *G. B.* where he always has resided, a *British* subject. The defendant then prayed the court to direct the jury, that the warrant of escheat which issued to the lessor of the plaintiff, issued without authority of law, the property being in the *state of Maryland* as confiscated property, and not liable to be affected by a warrant of escheat.

CHASE, Ch. J.*(a.)* The court are of opinion, that if the heirs of *Scarth* were living in *Great Britain* at the passage of the acts of October 1780, *ch.* 45, *ch.* 49, and *ch.* 51, that

*(a)* *Done*, J. concurred. *Srigg*, J. gave no opinion.

the warrant of escheat which issued to the lessor of the plaintiff, issued without authority of law; but that a patent which issued on such warrant came within the provision of the act of November 1781, *ch.* 20, *section* 8.

4. *The second bill of exceptions in continuation.* The defendant then offered in evidence the valuation of the land so escheated by the lessor of the plaintiff, and the sum by him paid into the treasury for the land on the 24th of December 1799, and that the sum so paid was only *two-thirds* of the appraised value of the land so escheated. And he then prayed the opinion of the court, and their direction to the jury, that if they were of opinion that the lessor of the plaintiff had only paid *two-thirds* of the ap-praised value of the land so escheated, that then he could not entitle himself to the benefit of the warranty contained in the act of November 1781, *ch.* 20, *s.* 8.

CHASE, Ch. J.*(a.)* The court are of opinion, that if the jury believe the facts stated, that then the patent was good, valid and operative in law, to pass the land to the lessor of the plaintiff, and his heirs, notwithstanding he had not paid more than *two-thirds* of the appraised value, the court considering his case as coming fully within the provision of the *eighth section* of the act of November 1781, *ch.* 20, and that *two-thirds* of the value of the land was as much as he was liable to pay. The defendant excepted to this last opinion, and to so much of the preceding opinion as declares the patent to come within the provisions of the *8th section* of the act of November 1781, *ch.* 20.

5. *The third bill of exceptions.* The defendant then read in evidence a record of the late provincial court of *Maryland*, of a judgment for *attachment*, recovered in that court at April term 1732, by *Littleton Waters* against *Jonathan Scarth*, for £397 9 6, sterling money, and costs; also a record of that court of a writ of *attachment* issued on that judgment by *Waters*, on the 15th of November 1736, against the goods, chattels and credits, of *Scarth*; and a return made on that writ by the sheriff of *Baltimore* county, to whom it was directed, certifying that he had attached, as the goods and chattels of *Scarth*, a tract of land called *Brown's Adventure*, containing 870 acres, and

*(a) Done,* J. concurred. *Sprigg,* J. gave no opinion.

1807.
Owings
vs
Norwood

A grant of land as escheat, which was liable to con-fiscation, is valid notwithstanding the grantee had not paid more than two-thirds of the appraised va-lue of the land

The legal title to lands, condemn-ed under an at-tachment, cannot be acquired with-out a *fieri facias* and sale of the lands so condem-ed

1807.

Owings
vs
Norwood

which he had caused to be appraised, &c. and an ap-- praisement of the said land, amounting to £304 10 0 ster-- ling money; upon which return judgment of condemnation in the usual form, was rendered at May term 1737. Other records of attachments and condemnation against sundry garnishees, and other lands to the amount of £298 12 6 sterling, were offered in evidence. The plaintiff, to show that the land, part of *Brown's Adventure*, affected by the attachment, was the 386 acres, located by him upon the plots, as the land, part of *Brown's Adventure*, in the possession of *The Baltimore Company*, read in evidence the late Lord *Proprietary's old rent roll* (a), kept and remaining in the land office, showing that *Rawlings* was in possession of 870 acres, and *Barker* was in possession of 130 acres, of that land; also the *Proprietary's last rent roll* (b), showing that *Scarth* was in possession of 419 acres, and *Charles Carroll, Esquire, & Company*, (commonly called *The Baltimore Company*,) were in possession of 386 acres, of that land; also the *Proprietary's debt book* for the year 1754, which is the oldest debt book known of, or can be found, wherein it appears, that *The Baltimore Company* stand charged with quit rents upon the 386 acres of land, part of *Brown's Adventure*, and no more; and that *Scarth*, in those debt books, stands charged with the quit rents upon 419 acres, part of that tract; and that the respective charges against *The Baltimore Company*, and *Scarth*, are continued, in like manner, upon the Proprietary's debt books, from the year 1754 until the commencement of the revolution between *Great Britain* and *America*. The defendant then prayed the opinion of the court, and their direction to the jury, that by virtue of the judgment, attachment and condemnation, by the plaintiff given in evidence, a legal estate was vested in *Littleton Waters* in the tract of land called *Brown's Adventure*.

CHASE, Ch. J. The court are of opinion, that *Littleton Waters* did not acquire a legal estate in *Brown's Ad-*

(a) Made about the year 1708 it is supposed, but there is no date to it.
(b) Made about the year 1730 it is supposed, but there is no date to it.

*venture* by virtue of the judgment, attachment and condemnation. The defendant excepted.

1807.

Owings
vs
Norwood

6. *The fourth bill of exceptions.* The defendant then read in evidence an act of assembly of November session 1797, *ch.* 119, entitled, "an act to relinquish the right of this state to the lands therein referred to," and prayed the opinion of the court, and their direction to the jury, that by virtue of that act, the right of the state was so far vested in the persons possessing *Brown's Adventure*, under the condemnation aforesaid, that the lessor of the plaintiff could not in virtue of his warrant, certificate of survey and patent, have any right or title to the said land, or if any, then no more than the proportion or compensation to which a discoverer of confiscated property is entitled.

The right of an escheator of land liable to confiscation, attached on his obtaining his warrant, and it was saved by the proviso in the 2d section of the act of 1797, ch 119; and the grant to him operates to transfer the state's interest in the land

CHASE, Ch. J. The court are of opinion, that the right of the lessor of the plaintiff to *Brown's Adventure*, attached on his obtaining his warrant of escheat, and that his right was saved and protected by the proviso in the *second section* of the act of November session 1797, *ch.* 119. And the court are of opinion, that the grant to the lessor of the plaintiff operates to transfer to him the interest the state had in the land called *The Discovery*, from the time of the obtention of his warrant of escheat. The defendant excepted.

7. *The fifth bill of exceptions.* The defendant then prayed the opinion of the court, and their direction to the jury, that if the warrant of escheat, which issued to the lessor of the plaintiff, issued without authority of law, that then the warranty contained in the act of November 1781, *ch.* 20, *s.* 8, did not operate to give title to the lessor of the plaintiff; and that there can be no *relation* to a warrant which issues without authority of law, or to a certificate made in pursuance of such warrant.

The act of Nov 1781, ch 20, s 8, secured to an escheator the land by him escheated, though liable to confiscation, on his paying two thirds of the value of the land to him; and the grant of the land to him operated by relation to the date of the warrant of escheat

CHASE, Ch. J. The court are of opinion, that the act of November session 1781, *ch.* 20, *s.* 8, did secure to the lessor of the plaintiff the land so by him escheated, on his paying two-thirds of the value of the land, being what he was liable to pay for the same as confiscated *British* property; and that the grant obtained by him did operate to

1807.

Owings
vs
Norwood

pass the land to him by relation, from the date of the war-
rant. The defendant excepted.

Under the acts of confiscation, the state by its commissioners was in possession of all *British* property within the state. No *British* subject could hold land in this state on the 19th of November 1794

8. *The sixth bill of exceptions.* The defendant then prayed the opinion of the court, and their direction to the jury, that if *Brown's Adventure* belonged to a *British* subject at the time of passing the act confiscating *British* property in this state, and if no actual possession had been taken thereof by the state, or its agents, and no sale or disposition made thereof, by the state, to any person, at any time before the *treaty* between the *United States* and *Great Britain*, dated the 19th of November 1794, took effect, that the lessor of the plaintiff could make no title thereto by his warrant, certificate of survey and patent.

CHASE, Ch. J. The court are of opinion, that the state, by its commissioners, was in possession of all *British* property within the limits thereof, under and by virtue of the act of confiscation, October 1780, *ch.* 45, and the act of the same session *ch.* 49, to appoint commissioners, &c. and that the possession of the land was in the state at the time the lessor of the plaintiff obtained his escheat warrant; and that no *British* subject could hold land in this state on the 19th of November 1794, the time when the treaty was entered into between *Great Britain* and the *United States* of *America.* The defendant excepted.

Where a mortgage was executed in 1706 to J S of *Great Britain* who remained there, and never was in possession of the land mortgaged, and the mortgagor had in 1741 devised the land to his sons, no presumption could arise in favour of a person with 50 years exclusive possession, he not deriving title under the mortgagor, that the mortgage had been satisfied before the year 1780

9. *The seventh bill of exceptions.* The plaintiff then offered in evidence, that *Scarth* died before the year 1795, without heirs, and that *Barker* left heirs now living in this state. Also an escheat warrant, to affect by escheat the whole of *Brown's Adventure*, except the 130 acres conveyed to *Barker*, granted to the lessor of the plaintiff, &c. The defendant then offered in evidence, that the lineal descendants, and heirs at law of *Brown*, the original patentee, were at this time living in this state. Also, that *Rawlings*, the grantee, died leaving heirs, and that the heirs and descendants of *Rawlings* are at this time living in this state. Also, that the descendants, and heirs at law of *Scarth*, are at this time alive and residing in *Great Britain*; and that *Scarth* was a merchant in the year 1706, residing in *London*, trading to the then province (now state,) of *Maryland*; and that *Scarth*, and his descendants and heirs at law, have from the year 1796, in succession, severally resided in *Great Britain* to this time, being *British*

subjects, and never were in this state. Also the will of *Rawlings*, dated the 25th of March 1741, thereby devising that his lands, called *Brown's Adventure* and *Young's Lot*, be equally divided between his sons and daughters. Also that *Waters* is dead, and that his descendants and heirs are now living in this state. Also that *The Baltimore Company*, under whom the defendant claims, have been for fifty years last past in the actual possession and user of the whole of *Brown's Adventure*, by clearing and cutting the wood off the land for their iron works, and claiming the land; and that there has been no actual or mixed possession of any part of the land by *Scarth*, or by any person claiming under him, or by any person claiming adverse to *The Baltimore Company*. The defendant then prayed the opinion of the court, and their direction to the jury, that if they find the facts stated by the defendant to be true, and that no payment of principal or interest due on the mortgage from *Rawlings* to *Scarth* was at any time paid, made or done, on or after the 13th of May 1709, that then the jury may and ought to presume the mortgage satisfied before the year 1780, and that the plaintiff is not entitled to recover.

CHASE, Ch. J. The court are of opinion, that the facts stated will not warrant the jury in presuming the mortgage was satisfied before the year 1780, inasmuch as *Scarth* was continually a resident of *Great Britain*, and although he never entered into possession of the land; yet a possession of *The Baltimore Company* of 50 years will not authorise the presumption of the payment of the mortgage money, as the defendant has not deduced or shown any title in them from *Rawlings*; and therefore the court refuse to give the direction prayed. The defendant excepted.

10. *The eighth bill of exceptions.* The defendant then prayed the opinion and direction of the court to the jury, that if the facts are found true, as stated by the defendant, that then the acts of confiscation, of October 1780, *ch.* 45, and *ch.* 49, vested no beneficial interest in this state in the lands mentioned in the mortgage from *Rawlings* to *Scarth*, but that the same, if it vested in this state under the act of confiscation, was liable to the equity of redemption in the heirs of *Rawlings*, the mortgagor, and that by operation of the *British* treaty, so far as the mortgagee could claim an

*Lands mortgaged to a British subject were liable to confiscation where the time limited for payment of the money had elapsed, subject to a right of redemption; and the British treaty cannot operate in such a case*

1807.

Owings
vs
Norwood

interest in the mortgaged lands, the same was saved from confiscation by that treaty, and consequently the plaintiff is not entitled to recover.

CHASE, Ch. J. The court are of opinion, that on the expiration of the time limited in the mortgage for the payment of the money, a complete legal estate of inheritance vested in the mortgagee, liable to confiscation, and was vested in the state in virtue of the act of confiscation of October 1780, *ch.* 45, and the act of the same session, *ch.* 49, to appoint commissioners, &c. subject to the right of redemption in the mortgagor, and his heirs; and that the *British* treaty cannot operate to affect the plaintiff's right to recover in this ejectment. The defendant excepted.

Ancient deeds of lease and release, not necessary to be recorded, admitted in evidence

11. The defendant then offered to read in evidence an *original* lease and *release* from *Waters* to *Benjamin Tasker*, and others, *(The Baltimore Company,)* which are not to be found upon any of the records of the state, and which are dated, the *lease* on the 20th, and the *release* on the 21st of June 1738, reciting the judgment obtained by *Waters*, in the provincial court, for the condemnation of *Brown's Adventure*, mortgaged by *Rawlings* to *Scarth* the 13th of May 1706, as the effects of *Scarth*, &c. and conveying to *Tasker*, and others, so much and such part of *Brown's Adventure* as should, according to the valuation, upon oath, returned into the provincial court, amount to £145 1 5 sterling money, &c. Neither of which deeds appear to have been *acknowledged.* The plaintiff objected to the reading of the deeds in evidence.

CHASE, Ch. J. The court are of opinion, that the lease and release, being ancient deeds, not necessary to be recorded, may be read in evidence to the jury. They were accordingly read to the jury.

There can be no presumption that a title had been perfected, where deeds are produced showing a defective title had been transferred

12. *The ninth bill of exceptions.* The defendant then prayed the opinion of the court, and their direction to the jury, that if they find the facts true, as stated by the defendant, that then the deeds of lease and release from *Waters* to *Tasker* and others, conveyed a legal title in the lands therein mentioned; and that if a legal title did not pass, that then the jury may and ought to *presume* a title in *Tasker* and others, to the whole of an undivided 386

acres of land, being an undivided part of the 870 acres of land, mortgaged to *Scarth*, called *Brown's Adventure*.

CHASE, Ch. J. The evidence will not warrant the court to direct the jury to presume that *Scarth* perfected the title of the defendant, deeds having been produced showing that a defective title had been transferred. Until all the money was paid, *Scarth* was not bound to convey or diminish the security he had acquired for the whole debt due to him. The court refuse to give the opinion and direction as prayed. The defendant excepted.

13. *The tenth bill of exceptions.* The defendant then prayed the opinion of the court, and their direction to the jury, that as to all that part of *Brown's Adventure*, contained in the deeds from *Waters* to *Tasker* and others, under whom the defendant claims, the patent granted to the lessor of the plaintiff doth not give him a title thereto, or enable the plaintiff to recover the same.

*The court would not direct the jury that the plaintiff's escheat grant did not pass the whole of the land therein, the defendant claiming a part thereof under a defective title*

CHASE, Ch. J. The court refuse to give the opinion and direction prayed.

The defendant excepted. The verdict and judgment being for the plaintiff, the defendant appealed to this court, where the cause was argued at December term 1806, before TILGHMAN, BUCHANAN, NICHOLSON, and GANTT, J.

*Martin, Key* and *Harper,* for the appellant, in their arguments on the *first* bill of exceptions, contended, that every deed, to give it validity, must contain, at common law, 1. Indentation. 2. Sealing. 3. Delivery; and superinduced by the act of 1699, *ch.* 42, two other requisites, 1. It must be acknowledged; and 2. It must be enrolled within twelve months from its date. They also contended, 1. That the deed from *Brown* to *Gadsby* appeared to have been executed *in pais* before *Carroll* and *Bland*, and sealed and delivered in their presence. 2. That the receipt of the alienation fine, as endorsed on the deed, stated that it was paid to *Carroll* on the 4th of May 1699. 3. That there was strong evidence of the execution of the deed on that day, because *Carroll*, who gave the receipt, was a witness to its execution. 4. That it was unusual to pay the alienation fine before the execution of the deed, as it could not be demanded before execution, being a duty arising on the actual alienation, and not before. 5. That

1807.

Owings
vs
Norwood

it was further established by the act of the clerk of the court, who officially certified the alteration of the date, as a proceeding in court by the consent of the court and the parties; which, when done, admitted the deed to be recorded. 6. That it was the official act of the clerk could not be doubted, because it was made under the eye of the court, and with their consent, and endorsed on the original deed. 7. That it was endorsed at the request of the grantee, for his benefit, and to explain the date of the alienation fine. 8. That the memorandum, after so great a lapse of time, was the best evidence of the fact, and ought therefore to have been admitted in evidence as the act of the clerk in open court, with the consent of the court and the parties to the deed. They referred to *Gilb. L. E.* 108. *Markham vs. Gonaston, Cro. Eliz.* 626. *Cospey vs. Turner, Ibid* 800. *The State vs. Oden* (a). *Russell's Lessee vs. Baker,* 1 *Harr. & Johns.* 71. *Hoddy's Lessee vs. Harryman,* 3 *Harr. & M'Hen.* 581. *Wood vs. Owings & Smith,* 1 *Cranch,* 239.

On the *second* bill of exceptions they contended, 1. That the land was not liable to escheat, there being heirs of *Scarth;* and they referred to the several acts of confiscation of October 1780, *ch.* 45, *ch.* 49, and *ch.* 51. 2. That this was not a case within the warranty of the act of November 1781, *ch.* 20, *s.* 8. They cited 1 *Blk. Com.* 91. 3. That the land was liable to confiscation, and the title to it could only be obtained in a particular manner—by sale and deed; and that the land office had no power or authority over confiscated lands. They referred to acts of 1784, *ch.* 81; 1785, *ch.* 66, *ch.* 88; 1788, *ch.* 49; 1789, *ch.* 47; 1791, *ch.* 77, *s.* 8; 1792, *ch.* 81, *s.* 6; 1793, *ch.* 64; 1795, *ch.* 6; 1796, *ch.* 12; 1799, *ch.* 80, *s.* 6; and 1800, *ch.* 62, *s.* 6. 4. That the patent was made without au-

A executed a bond to B, and delivered it to C, to be delivered to B—*Held* not to be the act and deed of A, it not having been received by B.    (a) In the case of *The State vs. Oden,* in the general court at May term 1800, in debt on bond, the defendant pleaded *non est factum,* and that the bond was delivered as an *escrow.* At the trial the plaintiff offered to prove, that J. S. was indebted to the state, and that the defendant was indebted to J. S; that it was agreed that J. S. should give up to the defendant his bond, and that the defendant should execute his bond to the state for the sum which he owed to J. S.—which was done. That the defendant's bond was presented to the state's agent, but which was refused to be received in discharge of the debt due to the state by J. S, and upon which bond this suit was brought in the name of the state for the use of J S. The GENERAL COURT refused to direct the jury that the bond was the deed of the defendant.

thority, and was void. They cited *Kelly's Lessee vs. Greenfield*, 2 *Harr. & M'Hen.* 121.

On the *third, fourth,* and *fifth* bills of exceptions, they contended, 1. That this land was held under a judgment of condemnation on attachment. They referred to the act of 1715, *ch*, 40. Stat. 5 *Gee.* II. *ch.* 7. *Plater's Lessee vs. Hepburn*, 3 *Harr. & M'Hen.* 434. *Davidson's Lessee vs. Beatty, Ibid.* 594. The act of 1797, *ch.* 119. 2. That if it could not be legally held under that judgment, it was embraced by the releasing act of 1797, *ch.* 119, unless it came within one of the provisos. 3. That the *second* proviso could not aid the appellee, for two reasons—1st. because *Norwood* was not an informer against *confiscated* lands; and 2d. because the rights of informers extended not to the land, but to a certain part of the price. They referred to the acts of 1785, *ch.* 88, *s.* 3; 1788, *ch.* 49, *s.* 2; 1789, *ch.* 47, *s.* 20; 1790, *ch.* 65; 1791, *ch.* 77, *ch.* 90; 1792, *ch.* 81; 1794, *ch.* 40, *s.* 7; & 1800, *ch.* 62. 4. That the only remaining question was, whether *Norwood* came within the *first* proviso; that is, whether at the time of passing this act, (21st January 1798,) he had a right in or to this land? They contended that the grant to *Norwood* could have no relation to the date of the escheat warrant, which had illegally issued; nor to the date of the certificate of survey, which was equally illegal, as there could be no relation to an illegal or tortious inception of title. They cited 3 *Coke*, 286, 29. a. 2 *Ventris*, 200. *Townsend vs. Ash*, 3 *Atk.* 340. *Co. Litt.* 310, b. 3 *Shep. Abr.* 150, 151, 152. *Howard vs. Cromwell*, 4 *Harr. & M'Hen.* 625, and 1 *Harr. & Johns.* 115. *Peter vs. Mains*, 4 *Harr. & M'Hen.* 423. *Hammond vs. Norris*, in the General Court, (see *post.*)

On the *sixth* and *eighth* bills of exceptions, they contended, 1. That the confiscation act excepted debts, and, by an equitable construction, it excepted all the incidents to and securities for debts. They cited *Pow. on Mort.* 13, 15, 16, 178, 179. 2. That if mortgages were affected by the act of confiscation, still the treaty of peace protected them, and operated as a repeal *pro tanto.* They referred to the treaty of peace of 3d of September 1783, *Art.* 4, 5, 6. *Ware vs. Hylton*, 3 *Dall.* 199. *Clerke vs. Harwood, Ibid* 342; and the treaty of the 19th of November 1794, *Art.* 9.

On the *seventh* bill of exceptions they contended, that the nature and length of the possession of the appellant, and those under whom he claimed, to the exclusion of all others, and there being no demand of the mortgage debt, were sufficient for the court to have directed the jury to presume the mortgage debt had been satisfied.

On the *ninth* and *tenth* bills of exceptions, they cited *Warren vs. Greenville*, 2 *Stra.* 1129. *Bridges vs. The Duke of Chandos*, 2 *Burr.* 1065. *Anonymous* Case, 1 *Ventris*, 257. *The Mayor of Hull vs. Horner*, *Cowp.* 102. *Eldridge vs. Knott, Ibid* 214. *Cocksedge vs. Fanshaw, Dougl.* 119. 12 *Coke*, 5. The act of 1797, *ch.* 119. *Carroll et al. Lessee, vs. Norwood*, 4 *Harr. & M'Hen.* 287.

*Ridgely, Mason,* and *Johnson,* (Attorney-General,) for the appellee, in their arguments on the *first* bill of exceptions, insisted, 1. That the acknowledgment of the deed from *Brown* to *Gadsby* was no proof that there was a delivery before that time. 2. That the memorandums taken together, prove that there was a delivery at that time. They cited *Smartle vs. Williams,* 1 *Salk.* 280. *Markham vs. Gonaston, Cro. Eliz.* 626, 627.

On the *second* bill of exceptions, they contended, 1. That the land was liable to escheat, and that the escheat grant was *prima facie* evidence of an escheat. That if *Scarth,* or his daughter, died after the 4th of July 1776, and before the act of confiscation, then the land escheated to the state, as the next heir being an alien could not inherit; and that it was incumbent on the appellant, who claimed against the escheat grant, to prove that this did not happen. 2. That admitting the land to have been liable to confiscation, and not escheat, still the grant ought to pass it; because, at the time of the grant, the price of escheat and confiscated lands were the same. 3. That at the time of making the grant, the chancellor had authority to grant confiscated lands under the acts of 1793, *ch.* 64, and 1795, *ch.* 6. 4. That he had general authority to judge and decide in disputes respecting the title of confiscated lands, and that he did so on *Hammond's* caveat; and his decision ought to be final under the acts of 1785, *ch.* 66; April 1787, *ch.* 30, *s.* 4, and 1789, *ch.* 35, *s.* 4. 5. That the grant was protected by the warranty clause in the act of November

1781, *ch.* 20, *s.* 8. They referred to 2 *Blk. Com.* 249. The several acts of confiscation before referred to; and the acts of November 1781, *ch.* 20, *s.* 8, *s.* 6, 17; 1793, *ch.* 64; 1795, *ch.* 6; 1785, *ch.* 66, *ch.* 88, *s.* 3; and April 1787, *ch.* 30, *s.* 4. *Wynne vs. Wynne,* 1 *Wils.* 43. *Goodtitle vs. Bailey,* 2 *Cowp.* 600. *Walton vs. Shelley,* 1 *T. R.* 296. *Buckland vs. Tankard,* 5 *T. R.* 578. *Rex vs. The Bishop of Chester, &c.* 2 *Salk.* 561. *Kelly's Lessee vs. Greenfield,* 2 *Harr. & M'Hen.* 140. *Hammond et al. Lessee, vs. Norris,* in the general court, (see *post*). *Goodtitle vs. Morgan,* 1 *T. R.* 758. *Gittings, jr. Lessee vs. Hall,* in the general court, (see *post* 112.)

On the *third* bill of exceptions they referred to the acts of 1715, *ch.* 40, *s.* 7, and 1797, *ch.* 119. *Rex vs. Deane,* 2 *Show.* 85. *Taylor vs. Cole,* 3 *T. R.* 296. *Davidson's Lessee vs. Beatty,* 3 *Harr. & M'Hen.* 594.

On the *fourth* bill of exceptions they referred to the acts of 1797, *ch.* 119; November 1781, *ch.* 20, *s.* 6, 8; and 1789, *ch.* 35, *s.* 5.

On the *seventh* bill of exceptions they contended, that the mortgage from *Rawlings* to *Scarth,* by lapse of time and the long possession of the mortgagee, had become an absolute estate, and the equity of redemption was gone. They cited 1 *Fonbl.* 323. 2 *Fonbl.* 269. *Cook vs. Arnham,* 3 *P. Wms.* 288, (note).

On the *eighth* bill of exceptions they referred to the acts of April 1782, *ch.* 60, *s.* 7, 8; and 1784, *ch.* 81. *Strithorst vs. Græme,* 2 *W. Blk. Rep.* 723.

On the *ninth* and *tenth* bills of exceptions they cited *Denn vs. Barnard,* 2 *Cowp.* 597. *Davidson's Lessee vs. Beatty,* 3 *Harr. & M Hen.* 594.

*Curia ad. vult.*

The Court of Appeals, at this term, *affirmed* the judgment of the General Court, concurring in the opinions expressed in all the bills of exceptions.

The appellant considered this was a case arising under a treaty, within the meaning of the constitution of the *United States,* and that the supreme court had appellate jurisdiction therein, he therefore sued out a writ of error under the provisions of the 25th *section* of the act of congress, entitled, "An act to establish the judicial courts of the *United*